IN THE
UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
PEORIA DIVISION

| | |
|---|---|
| THOMAS M. RYAN,<br>    Plaintiff,<br><br>v.<br><br>CARGILL, INCORPORATED,<br>    Defendant. | Case No. 1:14CV01183 |

## Order

Before the Court is the Plaintiff, Thomas Ryan's, Motion for Discovery Authorization (D. 9; D. 10) and the Defendant, Cargill, Incorporated's (Cargill), response thereto (D.11). The Court heard oral argument on the motion on November 10, 2014. For the reasons stated, *infra,* Ryan's motion is GRANTED in part and DENIED in part.

## I

Ryan alleges that Cargill denied him a "Disability Retirement Benefit" and therefore "benefits due to him under the terms of his plan," giving him a cause of action under the Employee Retirement Income Security Act (ERISA). 29 USC § 502(a).

As alleged in the Complaint (D. 1), Ryan had nineteen years of "Continuous Service" with Cargill when, at age thirty-nine, he suffered a severe spinal injury at the Cargill soybean facility in Bloomington, Illinois. Mr. Ryan thereafter applied for a "Disability Retirement Benefit" under the 2002 "Pension Plan" (Plan), to which he was a Participant as defined by that Plan. Cargill, acting as the Plan Sponsor and Administrator, denied the application.

In doing so, Cargill noted that "Section 1.16 of the Plan provides that a Participant is not eligible for Retirement under the Plan unless the Participant has a 'termination of employment for reason other than death <u>after</u> a Participant has fulfilled <u>all the requirements</u> for a . . . Disability Retirement.'" (emphasis in original) (D. 1-2 at ECF p. 2). Section 11.1 provides:

> A Participant shall be eligible to receive a Disability Retirement Benefit on or after having attained age forty-five (45) and having completed (15) or more years' Continuous Service and having the Company determine upon application by such Participant that he is totally and permanently disabled, as hereinafter defined.

(D. 1-1 at ECF p. 34). The dispute in this case involves the age requirement.

Cargill interpreted these provisions as requiring a Participant to have reached the age of forty-five at the time of "termination" before being eligible for a Disability Retirement Benefit. Because Ryan was not age forty-five at that time, Cargill concluded that the Plan forever precluded Ryan from receiving the Disability Retirement Benefit; he was ineligible because he did not meet the age requirement. (D. 1-2 at ECF p. 2). Cargill also stated that "the Plan has been consistently administered to require termination after attainment of both the age and service requirements listed for a Disability Retirement Benefit." Id. Ryan, however, alleges that so long as a Participant meets the disability and Continuous Service requirements, then he is entitled to the Disability Retirement Benefit at age forty-five, regardless of how old the Participant was at the time of "termination." In other words, Ryan was eligible for the benefit at the time of "termination" at age thirty-nine, but he could not *receive* the benefit until he reached age forty-five.

In the parties' Proposed Discovery Plan Pursuant to Rule 26(f) (D.), they disputed the discovery allowable in this case. Cargill posited that no discovery should be allowed, the case being limited to the administrative record, whereas

Ryan argued that he was entitled to some limited discovery. The Court directed the parties to brief the issue, and the issue is now before the Court.

In Ryan's Memorandum, quoting from the Discovery Plan, he notes that he seeks discovery in three areas. The first area involves exploring the structural conflict of interest inherent in the situation where the plan administrator both evaluates claims for benefits and pays benefits claims, present here because Cargill performs both roles. See *Metropolitan Life Ins Co v Glenn,* 554 US 105, 114 (2008). He would like to explore the nature and extent of this conflict with the following:

> No. 1. Plaintiff [Ryan] also intends limited interrogatories concerning Cargill's compensation policies for the staff that decide and review benefits claims, any management checks for inaccurate decision-making and management steps to wall off benefit claims from company finances.

(D. 10 at ECF pp. 4-5).

The second area involves Cargill's statement to Ryan that "the Plan has been consistently administered to require termination after attainment of both the age and service requirements listed for a Disability Retirement Benefit." (D. 1-2). Ryan would like limited interrogatories to determine the truth of this statement, he claiming that Cargill "opened the door" to this discovery by making this statement.

Finally, he seeks a calculation from Cargill of the monthly Disability Retirement Benefit he would have received had Cargill approved the benefit for him when he attained age forty-five in 2012, along with a specific itemized explanation of that calculation, with citation to Plan provisions for support. (D. 10 at ECF pp. 4-5). He argues he is entitled to discovery in this area because it "is simple common sense" to require the Plan fiduciary to verify the amount at stake. (D. 10 at ECF p. 5).

Cargill, however, argues that Ryan is entitled to no discovery at all. Specifically, Cargill posits that because this case involves a deferential standard of review, this case must be decided on the record submitted to the administrator alone. [Perlman v. Swiss Bank Corp Comprehensive Disability Protection Plan, 195 F3d 975, 981 (7th Cir 1999)](). Second, although there is a limited exception for discovery even in cases with deferential review where a structural conflict of interest is present, Ryan has failed to meet the threshold showing necessary to allow discovery into this question.

## II

"Deferential review of an administrative decision means review on the administrative record." [Perlman, 195 F3d at 981-82](). The general rule, with one notable exception discussed, *infra,* is that discovery is allowable only where review is *de novo*. [Id at 982](). Although decisions of ERISA plan administrators presumptively receive *de novo* review, if the plan establishes discretionary authority then review is deferential. [Id at 980](). Here, the Plan gives the administrator such discretion and, ordinarily, the deferential standard would therefore apply. ([D. 1-1 at ECF p. 79]()).

Although the parties dispute what the appropriate standard of review is in this case, the Court first finds that, under either standard of review, Ryan is not entitled to discovery which is unrelated to the conflict question. Here, the only question in the case revolves around the proper interpretation of the relevant Plan language. Under a *de novo* standard of review, the only information necessary to resolve the question is the language of the Plan itself. Thus, the discovery sought in item "No. 3" relating to what Ryan's potential benefits would be should he prevail is irrelevant to the question at hand. What Ryan's benefits would be makes it no more or less likely that one interpretation of the Plan is better than another. Likewise, regarding item "No. 2," whether the Plan

4

did or did not consistently interpret the Plan in the way it did in this case, again, does not make it more or less likely that one interpretation of the Plan is better than another. If the Court were to conduct a *de novo* review in this case, it would look at the language of the Plan, interpret it, and decide what the proper reading of the Plan is. None of the discovery Ryan seeks would be relevant to that determination.

On the other hand, under a deferential standard of review where the Court would decide whether the decision of Cargill was "arbitrary and capricious," [Perlman, 195 F3d at 982](), items 2 and 3 might be relevant. If Cargill interpreted the Plan the way Ryan does in every case but his, then it may very well have acted in an "arbitrary and capricious" manner here. Therefore, Cargill's practices in the past in similar situations would be relevant to this question. However, under the deferential standard of review, although the information Ryan seeks is relevant, such discovery is ordinarily precluded. [Perlman, 195 F3d at 981-82]() ("Deferential review of an administrative decision means review on the administrative record."). Ryan has not cited, nor has the Court found, cases which allow discovery in this circumstance on *any* question, no matter how relevant, with the exception of discovery exploring a conflict of interest.

The Court is mindful of the Catch-22 nature of this finding; if review is *de novo*, the discovery sought is irrelevant, but if review is deferential, the discovery sought may be relevant but is ordinarily precluded by the caselaw. Nevertheless, the Court is bound to follow those precedents and, accordingly, under either standard of review, discovery unrelated to a conflict of interest is not permissible. The Court therefore denies Ryan's request for discovery to the extent that he seeks discovery unrelated to the conflict of interest question.

## III
## A

As mentioned, *supra*, one issue on which courts have allowed discovery is where the plan administrator both evaluates claims for benefits and pays benefits claims, present here because Cargill performs both roles. Specifically, notwithstanding *Perlman*'s limitation on discovery, the Seventh Circuit in *Semien v Life Ins Co of North America*, 426 F3d 805 (7th Cir 2006), carved out an exception where this type of conflict is present. Where this type of structural conflict is present, the court held that discovery in a case challenging the benefits determination of plan administrators is permissible only in "exceptional" circumstances—circumstances in which the claimant can "identify a specific conflict of interest or instance of misconduct" and "make a prima facie showing that there is good cause to believe limited discovery will reveal a procedural defect." *Dennison v Mony Life Retirement Income Security Plan for Employees*, 710 F3d 741 (7th Cir 2013), quoting *Semien*, 436 F3d at 815.

Subsequent to *Semien*, however, the United States Supreme Court decided *Metropolitan Life Ins Co v Glenn,* 128 US 2243 (2008). In *Glenn,* the Court held that the dual role presented in this case creates a conflict of interest, structural in nature, and present in every such case. *Glenn*, 128 US at 2346. When determining how a court should take this conflict into account, the Court held that the conflict should "be weighed as a 'factor' in determining whether there is an abuse of discretion." Id at 2350, quoting *Firestone Tire & Rubber Co v Brunch,* 489 US 101, 115 (1989). The Court also noted some facts which inform the conflict question, such as the likelihood that the conflict affected the benefits decision, a history of biased claims administration, steps by the administrators to reduce potential bias

and to promote accuracy, and management checks that penalize inaccurate decisionmaking irrespective of whom the inaccuracy benefits. Id at 2351.

This language in *Glenn* caused some courts to question the continued validity of the burden erected by the holding in [Semien](#) before "conflict discovery" is permissible, see for example [Gessling v. Group Long Term Disability Plan for Employees of Spring/United Mgmt Co, 2008 WL 5070434 (SD Ind 2008)](#). In [Dennison](#), the Seventh Circuit directly addressed the impact of *Glenn* on the holding of *Semien* and its effect on conflict discovery.

The court in [Dennison](#) reiterated its opinion that benefits review officers should not "be subjected to extensive discovery on a thinly based suspicion that their decision was tainted by a conflict of interest." [710 F3d at 746](#), citing [Marrs v Motorola, Inc, 577 F3d 783, 787 (7th Cir 2009)](#). Although "[t]here is a latent conflict of interest any time someone is asking for money from a company," that conflict can be "muted to an extent if the party is an employee or former employee, since good relations with employees are a corporate asset." [Id.](#) Noting that *Glenn* "is not about discovery," the court reaffirmed that even where a structural conflict of interest exists, the correct standard of review remains after *Glenn* the arbitrary and capricious standard—"one of the facts that must be taken into account in applying that standard is any conflict of interest." [Dennison, 710 F3d at 747](#), quoting [Fischer v Liberty Life Assurance Co, 576 F3d 369, 375 (7th Cir 2009)](#). To determine the likelihood and gravity of the conflict "might require discovery to 'identify a specific conflict of interest or instance of misconduct,' a task of identification that in *Semien* [the court] said was a prerequisite to discovery, not a goal of discovery." [Id.](#)

The court in [Dennison](#) ultimately concluded that "[t]hese cases suggest a softening, but not a rejection, of the standard announced in *Semien*; and there can be no doubt that even when some discovery is necessary in a particular case to

explore a conflict of interest, trial courts retain broad discretion to limit and manage discovery under Rule 26 of the civil rules." 710 F3d at 747. Beyond this articulation, the court declined to further "trace out the contours of permissible discovery under ERISA," given that the "case law [is] in flux." Id.

The district courts in this circuit since *Dennison* have settled on a functional test for when to allow discovery when a structural conflict is present. For example, in Warner v Unum Life Ins Co of America, 2013 WL 3874060, *3 (ND IL), the court stated that "in light of *Semien,* as 'softened' by *Dennison*, discovery is still not permitted in the run-of-the mill case in the Seventh Circuit, and the two-part test established in *Semien* remains instructive." Although not an "onerous" burden, "a plaintiff still must identify a specific conflict or instance of misconduct and make a *prima facie* showing that there is good cause to believe that limited discovery will reveal a procedural defect" before being able to obtain discovery in a case governed by the arbitrary and capricious standard. Id. Applying this standard, the court in *Warner* noted that the plaintiff cited to several facts which allowed it to meet its burden, including the administrator's alleged hostility to the type of disability claim she made and a history of biased claims administration that sparked an investigation of its claims practices by the United States Department of Labor and dozens of state regulatory authorities, which culminated in the administrator paying a multi-million dollar fine and hundreds of millions of dollars to past claimants. Id. These alleged facts met the "softened" *Dennison* standard and, therefore, the court allowed limited discovery into the conflict question.

On the other hand, using the same "run-of-the-mill" standard articulated in *Warner,* the court in Boxell v Plan for Group Ins of Verizon Communications, Inc, 2013 WL 5230240, *5 (ND Ind), declined to allow conflict discovery. The court noted that the plaintiff "has not identified a specific conflict or instance of

8

misconduct or made a prima facie showing that there is good cause to believe that limited discovery will reveal a procedural defect." Although the plaintiff might have disagreed with the plan administrator's conclusion, "that does not equate to even a preliminary showing of misconduct, bias, or conflict of interest that might warrant discovery beyond the record on which the administrator relied," the court concluded. Id.

The court in *Gerbert v Thrivent Financial for Lutherans Group Disability Income Ins Plan*, 2013 WL 6858531 (ED Wis), applying the "run-of-the-mill" test, also declined to allow conflict discovery. Distinguishing the facts in the case from those in *Warner*, the court noted that in *Warner* the requisite showing was made due to the documented history of bias on the part of the plan administrator. The plaintiff in *Gerbert*, however, like the plaintiff in *Boxell*, had no such similar facts to direct the court, and therefore lacked the "key to open the door to additional discovery that is not permitted in the typical case." Id at *2.

**B**

Applying the correct standard in this case as outlined in *Dennison* and its progeny, it inevitably follows that Ryan fails to make the threshold showing necessary to allow conflict discovery, with one very limited exception, discussed in subsection "III.C", *infra.* In "No. 1," Ryan seeks discovery directly related to a conflict of interest. This case is the quintessential "run-of-the-mill" case. Although the structural conflict as defined in *Glenn* is present here, there are virtually no other facts which would allow conflict discovery. Neither the Complaint nor Ryan's Motion cite a specific conflict or instance of misconduct. No history of bias or prior specific findings of conflict by other courts is noted by Ryan. One cannot meet the "softened" *Semien* standard with virtually no facts, or even allegations, related to a conflict. Indeed, to allow conflict discovery in this case would turn the *Seimien/Dennison* standard on its head. As the court in

9

*Dennison* stated, identifying a "specific conflict of interest or instance of misconduct . . . was a prerequisite to discovery, not a goal of discovery;" Ryan seeks to do just the opposite. 710 F3d at 747. Moreover, if conflict discovery were allowed in this case, where the *only* fact alleged is the structural conflict identified in *Glenn*, then conflict discovery would be allowable in virtually every such case. Without question, the courts have rejected such a rule, instead adopting the "softened" *Semien* standard.

The Court is sympathetic to Ryan's assertion that "[i]n order for the Court to weigh a potential conflict or bias, it first has to be subject to discovery; if no discovery, there's nothing to weigh." (D. 10 at ECF p. 6). Common sense might make one wonder how one can even meet the "softened" *Semien* standard without being allowed *some* discovery to at least meet that burden. However, the precedents are clear and, as *Warner* illustrates, it is possible to meet ones burden without discovery; the facts and specific instances of bias presented in *Warner* were all presented to the court *prior to* and *in support of allowing* discovery. Thus, although somewhat counter-intuitive, one can—and indeed must—have specific facts of bias or misconduct *before* being allowed to conduct discovery into a structural conflict. Ryan having none, conflict discovery is precluded, with one exception.

## C

As the court in *Dennison* noted, trial courts retain broad discretion to limit and manage discovery under Rule 26 of the civil rules." 710 F3d at 747. The court in *Dennison* further declined to outline the contours of the "softened" *Semien* standard, leaving it to the lower courts to do so, as the courts in *Warner*, *Boxell,* and *Gerbert* did under the particular circumstances of those cases. Id. Lower courts must balance the interest in not subjecting benefits review officers "to extensive discovery on a thinly based suspicion that their decision was tainted by

10

a conflict of interest," 710 F3d at 746, citing *Marrs v Motorola, Inc, 577 F3d 783, 787 (7th Cir 2009)*, against the need for information for courts to "weigh" regarding the impact of a structural conflict of interest. *Glenn*, 128 US at 2350. In the present case, there is one area where the weighing of these factors falls on the side of allowing some limited discovery.

As Ryan notes, when denying him benefits, Cargill asserted that "the Plan has been consistently administered to require termination after attainment of both the age and service requirements listed for a Disability Retirement Benefit." (D. 1-2 at ECF p. 2). Ryan argues that this statement "opened the door" to some discovery on this question, and the Court agrees. This statement, as part of the administrative record, stands as the only evidence on this question in the record. It is an assertion made by Cargill without any evidence in the record to support it and, without discovery, Ryan has no means of testing the veracity of this statement. This statement brings the case out of the "run-of-the-mill" case on the issue to which it is directed. It is fundamentally unfair to allow Cargill to inject this question into the administrative record, while being shielded from providing any evidence to support the claim.

Likewise, discovery on this question is directly related to the structural conflict of interest for which courts have allowed discovery in exceptional cases. If Cargill's assertion is unsupported by facts, then the false assertion would itself be evidence of "a specific conflict of interest or instance of misconduct" which would allow Ryan to "make a prima facie showing that there is good cause to believe [further] limited discovery will reveal a procedural defect." *Dennison, 710 F3d at 741*, quoting *Semien, 436 F3d at 815*. In other words, if Cargill in fact did not always interpret the Plan in the manner it asserts, then further discovery might be warranted to explore how, if at all, the structural conflict present in this case impacted that difference in interpretation. On the other hand, if the facts

11

establish the truth of its assertion, then, in light of the analysis in the Order, there would be no "good cause" to allow further exploration into the conflict question.

Moreover, allowing discovery on this limited question does little violence to the policy against subjecting benefit review officers to "extensive" discovery. The question here is a simple one which can be addressed by a few interrogatories asking: 1) has Cargill ever interpreted the relevant Plan provisions differently than it did in the present case and, if so, 2) what were the circumstances of those instances.[1] The data on this question should be easily and readily available to Cargill and, assuming the truth of its assertion, may involve a simple answer of "no." In light of the circumstances of this case, the weighing of the relative interests in favor and against "conflict" discovery, and the precedents on the question, the Court finds this limited discovery is warranted and within its "broad discretion to limit and manage discovery under Rule 26 of the civil rules." *Dennison*, 710 F3d at 747.

**IV**

For the reasons stated, *supra*, Ryan's Motion for Discovery Authorization (D. 9) is GRANTED in part and DENIED in part.

Ryan shall submit appropriate interrogatories to Cargill limited to the question as allowed in this Order in subsection III.C, *infra*, within 14 days of entry of this Order. Cargill shall respond or object within the time period set forth in Federal Rule of Civil Procedure 15(b)(2).

A telephonic status conference is set on February 10, 2015, at 1:30 pm to set additional deadlines in this matter and consider any requests by Ryan for

---

[1] The Court does not presume to provide Ryan with the exact wording of any interrogatories it may submit to Cargill, but rather simply notes here the general areas to which any such interrogatory is limited.

12

additional conflict discovery if he believes that Cargill's responses to his interrogatories warrant the same under the law as set forth herein.

So Ordered.

Entered on November 12, 2014

s/Jonathan E. Hawley<br>U.S. MAGISTRATE JUDGE